STATE OF NORTH CAROLINA v. LARRY D. BREWINGTON

STATE OF NORTH CAROLINA v. DONNIS E. NORRIS, JR.

No. 8512SC741

(Filed 1 April 1986)

1. **Constitutional Law § 48— codefendants—represented by same attorney—not ineffective assistance of counsel**

     Defendant Brewington was not denied effective assistance of counsel in a prosecution for conspiracy and armed robbery because the same counsel represented both defendants where counsel was privately employed by each defendant; the court conducted a *voir dire* hearing in which it examined both defendants and inquired of their counsel and the prosecutor as to the existence of any potential conflict between the defendants; the court explained to each defendant his right to representation by separate counsel; neither defendant requested separate counsel nor objected to the joint representation; defendant Brewington made no showing of any actual conflict of interest between himself and defendant Norris during the trial or sentencing hearing or that his counsel's performance was adversely affected by the joint representation; the defenses presented by each defendant were not antagonistic; and the fact that the codefendant was identified by the victim while the evidence against defendant Brewington was circumstantial did not indicate a conflict.

**2. Conspiracy § 5.1— conspiracy to commit armed robbery—statements of codefendant—admissible**

The trial court did not err in a prosecution for conspiracy and armed robbery by admitting testimony that a codefendant offered a witness $100 to transport him to Fayetteville on the evening of the robbery. The State presented sufficient independent proof to support a reasonable inference that a conspiracy existed between the defendants at the time of the conversation to rob the victim and the codefendant's statements were admissible against both defendants as having been made during the pendency of the conspiracy and in furtherance of its purpose.

**3. Criminal Law § 161.2— assignments of error in brief—no argument—assignments of error deemed abandoned**

Where assignments of error were placed in defendant's brief with the statement that they were not abandoned but no argument was presented, those assignments of error were deemed abandoned. App. Rule 28(a).

**4. Criminal Law § 102.5— cross-examination concerning victim's identification of defendant—objections sustained—no abuse of discretion**

The trial court did not abuse its discretion in a prosecution for conspiracy and armed robbery by sustaining the State's objections to cross-examination of the victim concerning the victim's identification of a photograph of someone other than defendant Norris as the perpetrator of the robbery. Defendant's exceptions related to questions asked on recross-examination, the objections were sustained after the victim had already been extensively cross-examined, and the questions were repetitive and argumentative.

**5. Criminal Law § 128.2— improper question to codefendant—mistrial denied—no error**

There was no error in the denial of defendant Norris's motion for a mistrial after the prosecution asked defendant Brewington if he had been fired from his job because he had stolen from his employer. The trial court immediately sustained defendants' objection to the question and instructed the jury to disregard it.

**6. Robbery § 3— codefendant's knowledge that the victim carried money—objection overruled—no error**

The trial court did not err in a prosecution for conspiracy and robbery by overruling defendants' objection to the prosecutor asking the victim if defendant Brewington knew the victim was carrying money in a folder. Evidence that Brewington knew that the victim was carrying a substantial sum of money in a folder would be relevant as evidence of motive; although the response was that "it's possible," there was nothing in the record to indicate that anything other than a response based on personal knowledge was being sought; and defendants made no motion to strike the answer.

**7. Criminal Law § 73.1— origin of collect telephone calls—hearsay—admission not prejudicial**

There was no prejudice in a prosecution arising from a robbery in Fayetteville from the erroneous admission of evidence that collect calls were made to

one defendant's house from pay telephones in Fayetteville. The evidence was relevant in that the number to which the calls were made was the number which defendant Brewington gave to police as his telephone and the address on the telephone company records was defendant Brewington's, but the portions of the telephone records indicating the origin of the call were inadmissible hearsay because there was no way for the telephone operator to verify the number given by the caller. However, the evidence of the specific numbers from which the calls were made was insignificant and could not have resulted in prejudice for defendants. N.C.G.S. 8C-1, Rule 803(6).

**8. Robbery § 4.3— armed robbery—inconsistent identification—evidence sufficient**

> There was sufficient evidence to defeat defendant Norris's motions to dismiss charges of armed robbery where the evidence tended to show that defendant Norris took money from the person of the victim without the victim's consent while armed with a shotgun and threatening its use. Any inconsistencies in the victim's identification of Norris were for the jury to resolve.

APPEAL by defendants from *Allsbrook, Judge.* Judgment entered 8 March 1985 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 2 December 1985.

Each defendant was indicted for conspiring with the other to commit the felony of robbery with a firearm against William B. Faircloth and for the commission of the robbery of Mr. Faircloth with the use of a shotgun. Both defendants entered pleas of not guilty and the cases were consolidated for trial. A jury returned verdicts finding each defendant guilty as charged. Defendant Brewington was sentenced to an active 14 year term of imprisonment upon his conviction of robbery with a firearm and a consecutive 3 year sentence, which was suspended, upon his conviction of conspiracy to commit robbery with a firearm. Defendant Norris was sentenced to an active 20 year term of imprisonment upon his conviction of robbery with a firearm and a consecutive 5 year sentence, which was suspended, upon his conviction of conspiracy. Both defendants appeal.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Michael Rivers Morgan, for the State.*

*Jay Trehy for defendant appellant Larry D. Brewington.*

*D. K. Stewart for defendant appellant Donnis E. Norris, Jr.*

MARTIN, Judge.

Both defendants assign error to certain of the trial court's evidentiary rulings and to its denial of their motions to dismiss the charges. In addition, defendant Brewington separately contends that the court inadequately investigated potential conflicts which may have existed by reason of defendants' joint representation by the same counsel. Defendant Norris separately assigns error to the denial of his motion for mistrial made during the State's cross-examination of his co-defendant, Brewington. We have examined each of the defendants' joint and several contentions and conclude that each defendant received a fair trial free of prejudicial error.

At trial the State offered evidence tending to show that the victim, William Faircloth, and defendant Brewington had made plans to drive to Florida so that Faircloth could pick up a camper and bring it to North Carolina on Brewington's pickup truck. According to Faircloth's testimony, they had planned to leave approximately three days before 4 September 1984 but defendant Brewington had delayed their departure several times. On 4 September, while Faircloth and Brewington were at Brewington's house in Dunn making preparations to begin the trip, Brewington received a telephone call during which Faircloth overheard him tell the other party "We're getting ready to leave." A few minutes later, Brewington received a collect telephone call, but Faircloth was unable to overhear anything that was said. Shortly thereafter, Brewington and Faircloth left the house, with Brewington driving.

Faircloth was carrying more than $1,200.00 because he still owed money for the camper. He was carrying some of the money in a money clip and some of it in a folder, along with his driver's license and other papers. After Faircloth purchased gas for Brewington's truck, the two men drove south on I-95 until they reached a rest area in Cumberland County near Fayetteville, where Brewington stopped to use the restroom. While Brewington was in the restroom, a man (later identified by Faircloth as defendant Norris) approached the truck and asked Faircloth for a cigarette. The man was carrying a bag which appeared to contain a gun. After giving the man a cigarette, Faircloth went to meet Brewington and told him about the man at the truck. Brewington

and Faircloth returned to the truck and, as Brewington was entering the driver's side, the man pointed a shotgun at Faircloth, instructed both men to remove their clothing and told Faircloth to give him the folder. Faircloth complied. After Faircloth removed his trousers, the man demanded his money clip, which had fallen out of his pocket and onto the floorboard of the truck. Faircloth threw the money clip to him and the man left. Faircloth then gave Brewington some coins and instructed him to call the sheriff's department from a pay telephone. Brewington attempted to make the call but told Faircloth that the telephone would not work. However, an attendant at the rest area was able to call the sheriff's department from the same telephone. Faircloth provided a description of the robber to law enforcement officers and, after reviewing approximately a thousand photographs, identified one photograph as appearing similar to the man who robbed him. The person depicted by the photograph was not defendant Norris.

On the day following the robbery, Faircloth went to defendant Brewington's house. He observed Brewington, Brewington's wife and another couple arrive at the house in Brewington's truck. He was unable to see the other man's face, but noticed that the back of the man's head resembled that of the person who had robbed him the night before.

On 7 September 1984, Detective Sgt. Wiggs of the Cumberland County Sheriff's Department showed Faircloth another photographic lineup consisting of six photographs. After looking at the photographs for less than fifteen seconds, Faircloth picked out a photograph of defendant Norris and identified him as the person who had robbed him on 4 September.

The State also offered the testimony of Ronnie Brewington, a distant relative of defendant Brewington. He testified that on the afternoon of 4 September, defendants Brewington and Norris had come to his place of employment in defendant Brewington's truck. While both defendants were sitting in the truck, Norris offered Ronnie Brewington $100.00 to drive him to a place about a mile from Fayetteville on that evening at approximately seven o'clock. According to Ronnie Brewington, Norris stated that he wanted to go to Fayetteville "because of something about he was going to set up, had a set up, or something." Ronnie Brewington declined the offer because he would not be through with his work by that

time. The State also offered testimony of a representative of Carolina Telephone and Telegraph Co. tending to show that two collect calls to defendant Brewington's address had been made from pay telephone stations in Fayetteville on the evening of 4 September 1984.

Defendant Norris did not testify but offered evidence through family members and neighbors tending to show that he was at his home on the evening of the robbery. Defendant Brewington testified and denied having any discussion with Norris about the trip to Florida. He also testified that defendant Norris was not the man who robbed Faircloth at the rest area. He denied having been with Norris for several weeks before the robbery and for several days thereafter, and testified that he had not seen Ronnie Brewington on 4 September 1984.

[1] Both defendants were represented at trial by the same counsel. When the cases were called for trial, the court conducted a voir dire hearing in which it examined both defendants and inquired of their counsel and the prosecutor as to the existence of any potential conflict between the defendants. The court explained to each defendant his right to representation by separate counsel. Each defendant represented that he had privately employed Mr. Stewart as counsel and knew of no potential conflict with the other defendant. Although neither defendant requested separate counsel nor objected to the joint representation, defendant Brewington now assigns error, contending that the court's inquiry was insufficient and that he was denied his sixth amendment right to effective assistance of counsel because of the joint representation.

"In order to establish a conflict of interest violation of the constitutional right to effective assistance of counsel, 'a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance.' " *State v. Howard*, 56 N.C. App. 41, 46, 286 S.E. 2d 853, 857, *disc. rev. denied*, 305 N.C. 305, 290 S.E. 2d 706 (1982) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348, 64 L.Ed. 2d 333, 346-47, 100 S.Ct. 1708, 1718 (1980) ). *See also State v. Summerford*, 65 N.C. App. 519, 309 S.E. 2d 553 (1983), *disc. rev. denied*, 310 N.C. 311, 312 S.E. 2d 654 (1984). Defendant Brewington has made no showing of any actual conflict of interest between himself and defendant Norris during

the trial or sentencing hearing or that his counsel's performance was adversely affected by the joint representation. Nor are we persuaded by his argument that a conflict existed because his co-defendant was identified by the victim, while the evidence against him was only circumstantial. "Multiple defendants, almost by definition, will produce disparities, qualitatively and quantitatively, as to proof against each. It is a *non sequitur* to say that such disparity *ipso facto* results in disparity of effort devoted to such defendants if they have the same attorney." *State v. Summerford, supra* at 523, 309 S.E. 2d at 556 (quoting *People v. Smith,* 19 Ill. App. 3d 138, 144, 310 N.E. 2d 818, 823 (1974) ). The defenses presented by each defendant were not antagonistic; Norris presented evidence of alibi, Brewington denied any complicity and testified affirmatively that Norris was not the perpetrator of the robbery. This assignment of error is overruled.

[2]  By another separate assignment of error, defendant Brewington contends that the court erred in permitting the State's witness Ronnie Brewington to testify about defendant Norris' offer to pay him $100.00 for transportation to Fayetteville on the evening of the robbery. Citing *Bruton v. United States,* 391 U.S. 123, 20 L.Ed. 2d 476, 88 S.Ct. 1620 (1968), defendant Brewington argues that, as to him, Norris' statements were inadmissible hearsay and that their admission into evidence violated his right of confrontation.

In our view, the *Bruton* rule is inapplicable to this case. Where declarations are made by a party to a conspiracy during its existence and relating to its purposes, the statements are admissible as evidence against co-conspirators without violating the "right to confrontation" rule of *Bruton. State v. Conrad,* 275 N.C. 342, 168 S.E. 2d 39 (1969).

> [T]he general rule in North Carolina is that when the State establishes a *prima facie* case of conspiracy, the acts and declarations of each party to the conspiracy in furtherance of its purposes is admissible against other conspirators when made or done after the conspiracy was formed and before it terminated.

*State v. Martin,* 309 N.C. 465, 478, 308 S:E. 2d 277, 285 (1983). Considerable latitude is permitted in the order in which evidence may be offered to prove the formation and existence of the con-

spiracy, and the proof may consist of evidence of a number of facts and circumstances pointing to the existence of the conspiracy. *State v. Conrad, supra.* While the existence of the conspiracy must be established independently of the statements sought to be admitted, it is not always required that the State first establish a *prima facie* case before offering the statements. *State v. Tilley*, 292 N.C. 132, 232 S.E. 2d 433 (1977). "Sometimes for the sake of convenience the *acts or declarations of one are admitted in evidence before sufficient proof is given of the conspiracy . . . ." Id.* at 138-39, 232 S.E. 2d at 438 (quoting *State v. Jackson*, 82 N.C. 565, 568 (1880) ). "[I]f at the close of the evidence every constituent of the offense charged is proved the verdict rested thereon will not be disturbed . . . ." *Id.* at 139, 232 S.E. 2d at 439 (quoting *State v. Conrad, supra* at 347, 168 S.E. 2d at 43).

Applying the foregoing principles to the evidence in the present case, which we see no need to repeat, we conclude that the State presented sufficient proof, independent of the challenged statements of Norris, to support a reasonable inference that, at the time of Norris' conversation with Ronnie Brewington, a conspiracy existed between the defendants to rob William Faircloth. Norris' statements, having been made during the pendency of the conspiracy and in furtherance of its purpose, were admissible against both defendants.

[3] Defendant Brewington has attempted to bring forward three assignments of error by stating them in his brief, together with the statement that he does not abandon the assignment but presents no argument. We deem the assignments abandoned and decline to review them. "Questions raised by assignments of error in appeals from trial tribunals but not then presented *and discussed* in a party's brief, are deemed abandoned." N.C. R. App. P. 28(a). (Emphasis added.)

[4] Defendant Norris contends, by separate assignment of error, that the trial court erred by sustaining the State's objection to his cross-examination of William Faircloth concerning Faircloth's identification, on the night of the robbery, of a photograph of someone other than defendant Norris as the perpetrator of the robbery. We note that defendant's exceptions relate to questions asked on re-cross examination of Faircloth, and the objections were sustained after Faircloth had already been extensively

cross-examined about the initial photographic identification. The scope of permissible cross-examination is within the sound discretion of the trial judge and cross-examination which is merely repetitive and argumentative is properly disallowed; the trial court's ruling will not be disturbed in the absence of prejudicial abuse of discretion. *State v. Cox*, 296 N.C. 388, 250 S.E. 2d 259 (1979). The record indicates that the questions to which objections were sustained were both repetitive and argumentative; we find no abuse of discretion.

[5] Defendant Norris also contends that the court erred in denying his motion for mistrial, made after the prosecutor sought to impeach defendant Brewington by asking him if he had been fired from his job because he had stolen goods from his employer. Assuming, without deciding, that the question was improper, *see* G.S. 8C-1, Rule 608(b), as not probative of untruthfulness, we cannot conceive how defendant Norris has been prejudiced by the question directed to defendant Brewington, who has not assigned error to the denial of the motion. At any rate, the trial court immediately sustained defendants' objection to the question and instructed the jury to disregard it. Consequently, we find no error in the denial of the motion for mistrial.

[6] During the State's direct examination of the victim, William Faircloth, the prosecutor asked Faircloth, "Did Larry [Brewington] know that you carried money in that folder?" Defendants' objection to the question was overruled after a cautionary instruction by the court to the prosecutor not to lead the witness. Faircloth answered, "It's possible." Both defendants assign error to the court's ruling.

Evidence that defendant Brewington knew that Faircloth was carrying a substantial sum of money in a folder would be relevant as evidence of motive. "The existence of a motive is . . . a circumstance tending to make it more probable that the person in question did the act, hence evidence of motive is always admissible where the doing of the act is in dispute." 1 Brandis, North Carolina Evidence § 83, at 304 (2d rev. ed. 1982).

Defendants contend, however, that Faircloth's answer demonstrated that he had no personal knowledge of Brewington's awareness of the existence of the money, and amounted to no more than impermissible speculation. We agree with defendants

that Faircloth was competent to testify only as to matters within his personal knowledge. See *State v. Adcock,* 310 N.C. 1, 310 S.E. 2d 587 (1984). But, there is nothing on the face of the prosecutor's question to indicate that anything other than a response based on Faircloth's personal knowledge was being sought. From the record, it appears that the trial court interpreted defendant's general objection as being directed to the form of the question, and overruled the objection in the exercise of discretion. *See State v. Rankin,* 304 N.C. 577, 284 S.E. 2d 319 (1981) (it is within sound discretion of trial court to determine whether leading questions will be permitted). "[I]t is well settled that '[a] general objection, if overruled, is ordinarily no good, unless, on the face of the evidence, there is no purpose whatever for which it could have been admissible.'" *State v. Adcock, supra* at 18, 310 S.E. 2d at 597 (quoting 1 Brandis, *supra* § 27 at 105).

Assuming that Faircloth's response was beyond the realm of his personal knowledge and was speculative, defendants made no motion to strike the objectionable answer. "When the question does not indicate the inadmissibility of the answer, defendant should move to strike as soon as the inadmissibility becomes known. Failure to do so constitutes a waiver." *Id.* at 19, 310 S.E. 2d at 598. This assignment of error is overruled.

[7] Both defendants also assign error to the admission into evidence of various records of Carolina Telephone and Telegraph Co. They contend that the evidence was irrelevant because the telephone records related to a telephone number issued to James C. Brewington and that the State did not show any nexus between James C. Brewington or his telephone and either of the defendants. We disagree. The telephone number, although listed on the records of the company as being issued to James C. Brewington, was the same number which defendant Larry Brewington gave law enforcement officers as being his own telephone number. Moreover, the address listed on the telephone company records was the same as defendant Brewington's address. The records were duly authenticated by the company's custodian for billing records and, if otherwise competent, were admissible under the business records exception to the hearsay rule. G.S. 8C-1, Rule 803(6); *State v. Branch,* 288 N.C. 514, 220 S.E. 2d 495 (1975), *cert. denied,* 433 U.S. 907, 53 L.Ed. 2d 1091, 97 S.Ct. 2971 (1977).

The records indicated that two collect telephone calls were made to defendant Brewington's residence from pay telephone stations in Fayetteville on the evening of the robbery. They were offered in corroboration of William Faircloth's testimony with respect to the telephone calls received by defendant Brewington shortly before the two men departed from Brewington's home to begin their trip. However, the telephone company official testified that when a collect call is placed from a pay telephone station, there is no way for the operator to verify the number given by the caller as the number of the pay telephone station from which the call is placed. Defendants, therefore, contend that the numbers appearing in the telephone records, indicating the telephone numbers of the stations from which the calls were placed, were inadmissible hearsay. Because the accuracy of those numbers necessarily depends on the trustworthiness of the unknown person providing them to the operator, we are inclined to agree with defendants that it was error to permit the State to introduce into evidence those portions of the telephone records indicating the telephone numbers of the pay stations from which the collect calls were made.

We do not, however, view the admission of these telephone numbers as sufficiently harmful to defendants as to necessitate a new trial. The indication in the telephone records that the calls originated from Fayetteville was properly admitted as part of the business records exception. The evidence of the specific telephone numbers of the pay telephone stations from which the calls were made was insignificant and could not have resulted in prejudice to defendants. Further testimony of the telephone company official indicated that one of the numbers was fictitious and the other was not that of any pay telephone station located near the place where the robbery occurred. This assignment of error is overruled.

Finally, both defendants assign as error the denial of their respective motions to dismiss the charges due to the insufficiency of the evidence. We have necessarily considered their contentions with respect to the charge of conspiracy in connection with an earlier assignment of error and have answered it adversely to defendants' position.

In ruling upon a defendant's motion to dismiss, the question for the court is whether the State has produced substantial evidence as to each element of the offense, and that the defendant was the perpetrator. *State v. LeDuc*, 306 N.C. 62, 291 S.E. 2d 607 (1982). The question of the sufficiency of the evidence is the same whether the evidence is direct, circumstantial or both. *State v. Powell*, 299 N.C. 95, 261 S.E. 2d 114 (1980).

> The evidence is to be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom; contradictions and discrepancies are for the jury to resolve and do not warrant dismissal; and all of the evidence actually admitted, whether competent or incompetent, which is favorable to the State is to be considered by the court in ruling on the motion. [Citations omitted.]

*Id.* at 99, 261 S.E. 2d at 117.

In his brief, defendant Brewington concedes that the evidence admitted by the trial court was sufficient to withstand his motions to dismiss; he only preserves his exceptions to the denial of the motions in the event that we sustain his exceptions and assignments of error to the admission of that evidence. In making this concession, defendant Brewington necessarily concedes that his motions to dismiss were properly denied, since all of the evidence, whether competent or not, is to be considered in ruling on the motion. Even so, we have previously determined that the trial court did not commit prejudicial error with respect to the admission of evidence. Defendant Brewington's assignments of error are overruled.

[8] We also conclude that there was ample evidence before the trial court to defeat defendant Norris' motions to dismiss. The evidence, taken in the light most favorable to the State, tends to show that defendant Norris, while armed with a shotgun and threatening its use, took money from the person of William Faircloth without Faircloth's voluntary consent. Any inconsistencies concerning Faircloth's identification of Norris as the perpetrator were for the jury to resolve. We find no error in the denial of the motions to dismiss.

The defendants received a fair trial, free of prejudicial error.

No error.

Chief Judge HEDRICK and Judge EAGLES concur.