STATE OF NORTH CAROLINA v. COLIN GLENN WITHERS

No. 9227SC547

(Filed 3 August 1993)

**1. Evidence and Witnesses § 1123 (NCI4th) — sufficiency of showing of conspiracy — conspirator's testimony about coconspirators' statements admissible**

The State's evidence that five members of a rescue crew, working together on the night of a tornado, took items from a destroyed residence and put them in the rescue truck, went through various checkpoints set up by law enforcement officers without disclosing that they had the property, and each took some of the items with them when they went home after completing work was sufficient to show an implied understanding between the crew members to unlawfully possess property which had been taken from the residence; therefore, since the State made a *prima facie* showing of conspiracy, testimony by one conspirator with respect to the statements of coconspirators was properly admitted. N.C.G.S. § 8C-1, Rule 801(d)(E).

**Am Jur 2d, Homicide §§ 345, 346.**

**2. Evidence and Witnesses § 1617 (NCI4th) — tape recording — exclusion based on improper foundation error — exclusion based on misleading jury, causing undue delay proper**

In a prosecution of defendant for felonious larceny and possession of stolen property allegedly taken by rescue squad members who were called to the scene of a tornado, the trial court erred by excluding a tape recording of the State's witness based on improper foundation, since the witness's mother had sufficient personal knowledge of the witness's voice to properly identify her voice from a prior relationship, and the State and defendant stipulated to the date of the tape recording; however, the trial court properly excluded the tape because it posed a danger of misleading the jury, causing undue delay and being cumulative since the tape contained extreme profanity, did not tend to prove or disprove any of the essential elements of either crime charged, and contained threats directed to one other than defendant. N.C.G.S. § 8C-1, Rules 901, 403.

**Am Jur 2d, Evidence § 436.**

3. **Larceny § 154 (NCI4th)— felonious possession of stolen firearm—dishonest purpose—sufficiency of evidence**

There was no merit to defendant's contention that the charge of felonious possession of a stolen firearm should have been dismissed because the State failed to prove that defendant possessed any weapon with a dishonest purpose, since several factors, supported by uncontradicted evidence, indicated a dishonest purpose, including the fact that defendant found a pistol at a home destroyed by a tornado and then hid it under the seat of his rescue truck; he passed several roadblocks where he could have turned the pistol over to law enforcement authorities; defendant exercised dominion over the pistol by cleaning it, keeping it for four months, and then giving it to his uncle; he contacted police several times to check on the status of the pistol to see if it had been reported stolen or missing; he participated in transporting other firearms taken from the residence and told other members of the rescue squad that they could keep the weapons; and, when contacted by the investigating officers, defendant initially denied having any knowledge of the missing items.

**Am Jur 2d, Larceny § 155.**

4. **Larceny § 200 (NCI4th)— not guilty of larceny—guilty of felonious possession—verdicts not inconsistent**

The jury's verdicts of not guilty of felonious larceny of a firearm and guilty of felonious possession of a stolen firearm were not inconsistent as a matter of law.

**Am Jur 2d, Larceny §§ 176, 177.**

**Inconsistency of criminal verdict with verdict on another indictment or information tried at same time. 16 ALR3d 866.**

Appeal by defendant from judgment entered 5 December 1991 by Judge Julia V. Jones in Lincoln County Superior Court. Heard in the Court of Appeals 28 April 1993.

Defendant was charged in a bill of indictment with felonious larceny of several weapons and assorted jewelry in violation of G.S. § 14-70, and with felonious possession of stolen property in violation of G.S. § 14-72(a). He entered pleas of not guilty. At trial, the State presented evidence tending to show the following:

STATE v. WITHERS

[111 N.C. App. 340 (1993)]

On the evening of 6 May 1989, a tornado struck western Lincoln County destroying many homes including that of the State's witness, Clara Pizzoli. Defendant Colin Withers and four other members of the Stanley County Rescue Squad responded to the tornado site at the request of Lincoln County emergency management authorities. At this time, defendant was the captain of the Stanley Rescue Squad.

The squad was dispatched to retrieve a body near Ms. Pizzoli's residence. After removing the body, the crew went to the Pizzoli home which was left in ruins by the tornado. The crew was initially requested to search for injured or deceased occupants of the house, but remained at the residence after it was determined that the occupants were already at the hospital.

The crew continued to look about and found four guns and some jewelry. Defendant admitted finding a Browning 9mm pistol in a field during the search. He put the pistol under the seat of the crash truck. Rita Jones, a rescue squad member and State's witness, testified that defendant told the others to be quiet about the items found and said that insurance would reimburse the property owner for the loss. Upon returning to the rescue squad building in Stanley, defendant distributed the guns, including a .22 caliber rifle, a 12 gauge shotgun, and a .45 caliber revolver, to members of the squad. Other members, including Ms. Jones, divided up the jewelry.

Defendant took the 9mm pistol, cleaned it and kept it for four months. During this four month period, he contacted the police to inquire about the status of the pistol. He also spoke to a neighbor, Gaston County Police Officer Daniel Hawley, to determine if the gun had been reported stolen. Officer Hawley, however, did not recall being told that defendant had found the pistol in Lincoln County. In September 1989, defendant gave the pistol to his uncle, who sold it.

Following the tornado, Ms. Pizzoli discovered her jewelry box among the ruins of her home, but she did not find any jewelry in the box. Ms. Pizzoli also found the zipper pouch for the Browning 9mm pistol on which she had written the serial number of the pistol. She contacted the Lincoln County Sheriff's Department about the missing items. No report was filed because she was told by the police that after a tornado, it is difficult to distinguish between property that is stolen or simply missing.

STATE v. WITHERS

[111 N.C. App. 340 (1993)]

The Lincoln County Sheriff's Department began to investigate after Rita Jones reported to Crimestoppers of Gaston County on 28 August 1989 that two rifles, two handguns and some jewelry had been stolen from Lincoln County by rescue squad members. Lincoln County Sheriff's Department investigators spoke with defendant on 6 September 1989 about the missing items. Defendant denied having any knowledge of the missing items. On 20 September 1989, defendant contacted Deputy Bruce Rice of the Lincoln County Sheriff's Department to report that he had found two rifles in a closet at the Stanley Rescue Squad. Deputy Rice recovered these rifles, and Lincoln County investigators asked defendant to come to the Lincoln County Sheriff's Department. Defendant advised the deputies that he could obtain the Browning 9mm pistol. Upon returning with the pistol, defendant was arrested on 28 September 1989.

At the close of all the evidence, the trial court dismissed the charges relating to the jewelry and submitted to the jury only the issues of defendant's guilt of felonious larceny of a firearm and felonious possession of a stolen firearm. The jury found defendant not guilty of felonious larceny of a firearm, but guilty of felonious possession of a stolen firearm. The trial court entered judgment sentencing defendant to imprisonment for three years. This sentence was suspended, however, and defendant was placed on supervised probation for three years. Defendant appealed.

*Attorney General Lacy H. Thornburg, by Associate Attorney General Don Wright, for the State.*

*James R. Carpenter and David A. Phillips for defendant-appellant.*

MARTIN, Judge.

Defendant contends that the trial court erred by (1) admitting hearsay testimony by the State's witness, Rita Jones; (2) excluding a tape recording offered by defendant to impeach Ms. Jones' testimony; (3) denying defendant's motion to dismiss the charges of the possession of stolen weapons at the close of all the evidence, and (4) denying defendant's motion to set aside the verdict. For the reasons stated below, we find no prejudicial error.

[1] By his first assignment of error, defendant contends that the trial court committed prejudicial error by allowing State's witness,

Rita Jones, to testify to hearsay statements made by other members of the rescue crew during the evening of 6 May 1989, and then refusing to strike the testimony when the State failed to make out a *prima facie* case of conspiracy. We disagree.

Rule 801(d) of the North Carolina Rules of Evidence provides that "[a] statement is admissible as an exception to the hearsay rule if it is offered against a party and it is . . . (E) a statement by a coconspirator of such party during the course and in furtherance of the conspiracy." N.C. Gen. Stat. § 8C-1, Rule 801(d)(E) (1992). *State v. Tilley*, 292 N.C. 132, 232 S.E.2d 433 (1977). Statements of coconspirators are admissible against other members of the conspiracy so long as a *prima facie* case of conspiracy is established independently of the statements sought to be admitted. *Id.*, at 138, 232 S.E.2d at 438; *See also State v. Brewington*, 80 N.C. App. 42, 341 S.E.2d 82, *disc. review denied*, 317 N.C. 708, 347 S.E.2d 449 (1986). A coconspirator's statement may be admitted before the establishment of a *prima facie* case of conspiracy conditioned upon a subsequent showing of conspiracy before the close of the State's evidence. *Tilley*, at 138-39, 232 S.E.2d at 438-39; *Brewington*, at 49, 341 S.E.2d at 86-87. In order to use a coconspirator's statement against other coconspirators, the State must show that " '(1) a conspiracy existed; (2) the acts or declarations were made by a party to it and in pursuance of its objectives; and (3) while it was active, that is, after it was formed and before it ended.' " *Tilley*, at 138, 232 S.E.2d at 438.

A conspiracy is "an express agreement or mutual implied understanding between defendant and others to do an unlawful act or a lawful act by unlawful means." *State v. Lyons*, 102 N.C. App. 174, 183, 401 S.E.2d 776, 781, *affirmed*, 330 N.C. 298, 412 S.E.2d 308 (1991). It may be shown by direct or circumstantial evidence. *State v. Collins*, 81 N.C. App. 346, 344 S.E.2d 310, *appeal dismissed*, 318 N.C. 418, 349 S.E.2d 601 (1986). A conspiracy " 'may be, and generally is, established by a number of indefinite acts, each of which, standing alone, might have little weight, but, taken collectively, . . . point unerringly' " to its existence. *State v. Fink*, 92 N.C. App. 523, 530, 375 S.E.2d 303, 307 (1989), *quoting State v. Rozier*, 69 N.C. App. 38, 49, 316 S.E.2d 893, 901, *cert. denied*, 312 N.C. 88, 321 S.E.2d 907 (1984). In determining the sufficiency of the evidence to establish a conspiracy, the evidence is considered in the light most favorable to the State. *Collins, supra.*

At trial, the State sought to introduce, through the testimony of Rita Jones, statements made by members of the crew other than defendant with respect to the jewelry and guns. She testified, over objection, that she had asked her husband, Tony Jones, what he was going to do with the jewelry and that his response was "[k]eep it of course." She also testified that one of the other crew members, Richard Mills, agreed with defendant that everyone should keep quiet about the property and that "[t]he insurance will pay for it." After defendant and Richard Mills left the building, Ms. Jones testified that the following exchange took place between herself, her husband Tony Jones, and Arthur Greene:

A. Tony and Arthur waited 'til everybody else had left the building and they proceeded to put the jewelry on the table, looking through it, asked me if I wanted any, and I said, "No not really" because you don't—I told them, I said, "You don't know if the woman's dead or alive. How can you take her jewelry?"

Q. Did they say anything in response to that?

A. He just said—repeated what was said before, 'The insurance will pay for it, don't worry about it'.

In order for Ms. Jones' testimony to be admissible pursuant to Rule 801(d)(E), the burden was upon the prosecution to establish a *prima facie* case of conspiracy through evidence independent of these statements before the close of the State's evidence. We hold that the State produced sufficient evidence to carry its burden. Through other testimony by Ms. Jones, the State showed that five members of the rescue crew, working together on the night in question, had taken items from the Pizzoli residence and put them in the rescue truck, that they had gone through various checkpoints set up by law enforcement officers without disclosing that they had the property, and that when they went home after they had completed their work, each of them had taken some of the items with them. In our view, these acts, considered in the light most favorable to the State, are sufficient to show an implied understanding between the crew members to unlawfully possess property which had been taken from the Pizzoli residence. Since the State made a *prima facie* showing of conspiracy, Ms. Jones' testimony with respect to the coconspirator statements was properly admitted. Defendant's first assignment of error is overruled.

[2] Defendant contends in his second assignment of error that the trial court erred by denying defendant the opportunity to play before the jury a tape recording of a telephone call by the State's witness, Rita Jones. We find no error in the exclusion of the tape.

In *State v. Stager*, 329 N.C. 278, 406 S.E.2d 876 (1991), our Supreme Court held that instead of the seven-step test applied in *State v. Lynch*, 279 N.C. 1, 181 S.E.2d 561 (1976), only Rule 901 of the North Carolina Rules of Evidence has to be satisfied for admission into evidence of a tape recording. *Stager* and Rule 901 only require personal knowledge for authentication. *Id.; See also* N.C. Gen. Stat. § 8C-1, Rule 901(b) (1992). Rule 901 provides in pertinent part:

(a) *General Provision.*—The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

(b) *Illustrations.*—By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

(1) Testimony of Witness with Knowledge.—Testimony that a matter is what it is claimed to be.

. . .

(5) Voice Identification.—Identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker.

Once authenticated, the tape recording is admissible if legally obtained and contains competent evidence. *Stager*, at 316-17, 406 S.E.2d at 898.

In the case at bar, defendant attempted to introduce a tape recording to impeach the testimony of Rita Jones and to show her motive to testify against him. On direct examination, Ms. Jones testified that she did not threaten her husband or anyone at the Stanley Rescue Squad. Defendant, however, offered a telephone answering machine tape recording in which Ms. Jones profanely threatened to go to the authorities in Lincolnton and report her husband, who had been present when the property had been taken

and when it had been divided. Ms. Jones' former mother-in-law testified, based on her personal knowledge, that the voice on the tape was that of Ms. Jones. The witness could not pinpoint the date of the tape, but said it had been made in early August 1989. The State and defendant later stipulated to the date of the tape recording. The trial court, however, refused to admit the tape recording holding that defendant had not provided a proper foundation.

Applying *Stager* and Rule 901(b), we conclude that the trial court erred by excluding this tape recording based on improper foundation. The witness had sufficient personal knowledge of Ms. Jones' voice to properly identify her voice from a prior relationship, and the State and defendant stipulated to the date of the tape recording. We hold, however, that the tape was properly excluded for other reasons.

Rule 401 of the North Carolina Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (1992). Evidence offered to show a defect in the witness' truthfulness or veracity is relevant for impeachment. *1 Brandis on North Carolina Evidence*, § 38 at 192 (3d ed. 1988). Generally, relevant evidence is admissible. N.C. Gen. Stat. § 8C-1, Rule 402 (1992).

"Although relevant, evidence may be excluded if its probative value is *substantially outweighed* by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403 (1992) (emphasis added). The decision to allow or exclude evidence under this rule is a matter within the sound discretion of the trial judge and may be reversed for an abuse of discretion only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision. *State v. Jones*, 89 N.C. App. 584, 367 S.E.2d 139 (1988).

In the present case, the State suggests that the potential for prejudice outweighed the usefulness of defendant's tape because Ms. Jones' recorded statement was heavily laden with the emotion of a recently terminated marriage, and because she was intoxicated at the time that the tape was made. Ms. Jones' recorded message,

directed to her husband, not defendant, was: "[d]rinking or whatever you want to call it. I might be f---ed up, but I know about all your g-----n lies. I'm going to Lincolnton and I'm going to put your f---ing ass under the f---ing jail." While the tape in question directly contradicts Ms. Jones' earlier testimony denying making threats to "get back" at her husband, the tape does not tend to prove or disprove any of the essential elements of either crime charged. Furthermore, the threats made on the tape are not directed at defendant. On direct examination, defendant's witness, Joyce Jones, testified to the threat which Ms. Jones made, so that the impeaching evidence was disclosed to the jury. Considering these factors and the extreme profanity contained on the tape, we believe the tape posed a danger of misleading the jury, causing undue delay and being cumulative. *Id.* Therefore, we hold that the trial judge did not abuse her discretion in excluding the tape.

[3] Defendant contends in his third assignment of error that the trial court erred in denying defendant's motion to dismiss the charge of felonious possession of a stolen firearm at the close of all the evidence because the State failed to prove that defendant possessed any weapon with a dishonest purpose. We disagree.

In ruling on a motion to dismiss in a criminal action, the trial judge must consider the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn from the evidence. *State v. Brown*, 81 N.C. App. 622, 344 S.E.2d 817, *disc. review denied*, 318 N.C. 509, 349 S.E.2d 867 (1986). Conflicts in the evidence are for the jury to decide. *Id.* The trial court decides if there is substantial evidence of each element of the crime charged. *Id.* Substantial evidence is that which a reasonable mind would accept as sufficient to support a conclusion. *Id.*

From our review of the record, we find there is substantial evidence that defendant possessed the firearm with a dishonest purpose. Dishonest purpose is an essential element of possession of stolen goods. *See generally State v. Perry*, 305 N.C. 225, 287 S.E.2d 810 (1982). Dishonest purpose is equivalent to felonious intent. *State v. Parker*, 316 N.C. 295, 341 S.E.2d 555 (1986). Intent can be proven by direct or circumstantial evidence. *State v. Bell*, 285 N.C. 746, 208 S.E.2d 506 (1974). There is no need to show that defendant intended to personally gain from his action. *Parker*, *supra.*

STATE v. WITHERS

[111 N.C. App. 340 (1993)]

In the light most favorable to the State, several factors, supported by uncontradicted evidence, indicate a dishonest purpose on the part of defendant. After defendant found the Browning 9mm pistol at the Pizzoli home, he hid it under the seat of the rescue truck. He passed several roadblocks where he could have turned the pistol over to law enforcement authorities. Defendant exercised dominion over the pistol by cleaning the pistol, keeping the pistol for four months, and then giving the pistol to his uncle. He contacted the police several times to check on the status of the pistol to see if the pistol had been reported stolen or missing. He also participated in transporting the other firearms taken from the Pizzoli residence and told other members of the crew that they could keep these weapons. When contacted by the investigating officers, defendant initially denied having any knowledge of the missing items. These factors, taken together, support a reasonable inference of dishonest purpose. The trial court was correct in not allowing the motion to dismiss because this question was for resolution by the jury. This assignment of error is overruled.

[4] The defendant's final assignment of error is that the trial court committed reversible error in denying defendant's motion to set aside the verdict upon the grounds that the jury's verdicts were inconsistent as a matter of law. We disagree.

By enacting the possession of stolen goods statute, the Legislature intended to "plug a loophole in the law as it then existed when one was found in possession of stolen goods and the State was unable to prove either larceny or receiving." *Perry*, at 236, 287 S.E.2d at 817. The State does not have to prove who committed the larceny, nor is a larceny conviction a prerequisite to a jury finding a defendant guilty of felonious possession of stolen goods. *Id.* at 235, 287 S.E.2d at 816. In fact, the State may indict and try a defendant for larceny and possession of the same property, but a defendant may only be convicted of one of these offenses. *Id.; State v. Williams*, 65 N.C. App. 373, 309 S.E.2d 266 (1983), *disc. review denied*, 310 N.C. 480, 312 S.E.2d 890 (1984).

Applying the foregoing principles to the present case, the jury's verdicts of not guilty of felonious larceny of a firearm and guilty of felonious possession of a stolen firearm are not inconsistent as a matter of law. This assignment of error has no merit.

No error.

Judges EAGLES and JOHN concur.