DIETZ, Judge.
Defendant Henry Calvin Jones appeals his convictions for second degree murder, attempted first degree murder, attempted armed robbery, and various other offenses stemming from a failed robbery after a group of masked men surrounded the victims' car, demanded money, and then opened fire.
One of the victims survived his gunshot wounds but was unable to identify any of the assailants. As a result, the State's evidence at trial turned almost entirely on the testimony of Montrel O'Neal, who pleaded guilty to murdering one of the victims. As part of a plea bargain, O'Neal received a favorable sentencing recommendation from the State in exchange for testifying at Jones's trial. O'Neal testified that Jones repeatedly shot the other victim, who survived.
Jones argues that the trial court erred by excluding evidence that the State never charged several other men who participated in the robbery. He contends that this evidence was admissible because it supported a key theme of his defense-that O'Neal had a motive to pin the shooting on Jones because O'Neal was lifelong friends with the other men involved in the robbery, but not with Jones. Jones also argues that the prosecutor made several improper statements during closing arguments, both in reference to O'Neal's credibility and to the fact that Jones refused to voluntarily provide a DNA sample to law enforcement.
But Jones concedes on appeal that none of these arguments properly were preserved for appellate review. As explained below, Jones cannot overcome the exacting standard of review that applies to these unpreserved arguments. Because Jones already had presented other detailed evidence concerning O'Neal's lack of credibility, Jones has not shown that, but for the exclusion of the challenged evidence, the jury probably would have reached a different result. Likewise, Jones has not shown that the prosecutor's statements during closing argument were so grossly improper that the trial court's failure to intervene on its own initiative rendered the trial fundamentally unfair. Accordingly, we must reject Jones's arguments on appeal.
Facts and Procedural History
On 17 April 2010, the victims in this case, Brian McLaurin and Charles Morgan, met some women at a bar in Goldsboro. The women convinced McLaurin and Morgan to leave the bar and drive to a nearby housing area to meet them. When the victims arrived, one of the women got into the back seat and talked to the victims. Soon, the woman exited the vehicle and a group of masked men surrounded the car and demanded money from the victims. One of the men shot McLaurin while he was seated in the car, and shot him again as he tried to get out of the car and escape. As McLaurin fell down near the back of the car, he saw Morgan lying face down on the ground. Morgan also had been shot, and McLaurin could hear him wheezing. Morgan died at the scene, but law enforcement discovered McLaurin, and he survived after life-saving surgery at a nearby hospital.
McLaurin did not see his attackers because they were wearing masks. Nevertheless, by following leads in the case, law enforcement identified and arrested Montrel O'Neal for the murder of Charles Morgan. O'Neal pleaded guilty to second-degree murder, and received a favorable sentencing recommendation from the State in exchange for testifying against Defendant Henry Calvin Jones, whom O'Neal claimed shot Brian McLaurin, the other victim. The State later charged Jones with murder, attempted murder, attempted armed robbery, and numerous other offenses.
At trial, witnesses testified that O'Neal and Jones were among the group of masked men who approached the car that night to rob McLaurin and Morgan. But the State's only evidence directly tying Jones to the shooting of McLaurin was O'Neal's testimony pursuant to his plea agreement. Importantly, testimony at trial established that, before the robbery, O'Neal was longtime friends with the other men in the group, but not with Jones. O'Neal testified that, as the group was on its way to rob McLaurin and Morgan, Jones approached them and asked to participate in the robbery. O'Neal testified that the group agreed to let Jones participate in the robbery after he showed the other men that he had a gun.
Before trial, the State made a motion in limine to exclude any mention of the State's decision not to prosecute the other men who accompanied O'Neal and Jones during the robbery and shootings. The trial court granted the motion. At trial, Jones did not attempt to introduce any evidence about the State's failure to charge those other men and did not secure a ruling during trial on the admissibility of that evidence.
The jury found Jones guilty of second degree murder, attempted first degree murder, two counts of attempted armed robbery, discharging a firearm into occupied property inflicting serious injury, assault with a deadly weapon inflicting serious injury, possession of a firearm by a felon, and attaining the status of a violent habitual felon. The trial court sentenced Jones to life in prison without the possibility of parole. Jones timely appealed.
Analysis
I. Exclusion of Evidence at Trial
Jones first argues that the trial court erred by excluding evidence that the State never charged several other men allegedly involved in the crime, all of whom were friends of O'Neal, the State's key witness. Jones contends that this evidence was admissible to challenge O'Neal's credibility. Jones failed to preserve this issue for appellate review, and Jones concedes that we must review it solely for plain error. As explained below, we hold that Jones cannot satisfy the plain error test.
"For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial." State v. Lawrence , 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012). "To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty." Id. In other words, the defendant must show that, "absent the error, the jury probably would have returned a different verdict." Id. at 519, 723 S.E.2d at 335. "[P]lain error is to be applied cautiously and only in the exceptional case" where the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." Id. at 518, 723 S.E.2d at 334 (citations and brackets omitted).
Here, Jones argues that the alleged error had a probable impact on the jury's verdict because it affected the central theme of his defense. There was little evidence connecting Jones to the robbery and murder, and thus the State relied heavily on the testimony of O'Neal, who agreed to testify at Jones's trial in exchange for a plea bargain. At trial, Jones emphasized that O'Neal was friends with the other men present at the time of the shooting but was not friends with Jones. Thus, Jones suggested, O'Neal had a motive to pin the shooting on him rather than testifying against one of his friends, whom Jones suggested was the real shooter. See generally State v. Lewis , 365 N.C. 488, 498, 724 S.E.2d 492, 500 (2012).
The record indicates that the jurors understood Jones's argument. Indeed, during deliberations, the jury sent a question to the judge asking what happened to O'Neal's friends-a question that likely meant the jury wondered whether O'Neal's friends had been charged in connection with the robbery and shootings. This, in turn, suggests (although we can never know) that the jury struggled with the question of whether O'Neal could be trusted.
But the challenge Jones faces is the plain error standard of review. The jury already heard in detail other testimony and argument aimed at showing that O'Neal was pinning the crime on Jones to protect his friends. For example, during cross-examination, Jones's trial counsel questioned O'Neal about the planning of the attack to emphasize O'Neal's ties to the other men involved and his lack of similar ties to Jones:
Q. Okay. And that is the four of you, Malcolm Russell, Kevin Barksdale, Rahkeen Heath, and you Montrel O'Neal, each of you had a gun in that closet.
A. Yes.
Q. Henry Jones didn't have a gun in that closet.
A. No, sir.
Q. He wasn't part of that at that point.
A. No, sir.
...
Q. Okay. And speaking of these guys, the four of you together, you've known each other for a long[,] long time, haven't you?
A. Somewhat, yes, sir.
Q. Well, half your life.
A. I knew Malcolm half-all like that.
Q. You knew Malcolm all your life.
A. Yes.
Q. The other ones half your life.
A. Yes.
Q. Okay. But Henry Jones, you didn't know him that long, did you?
A. No, sir.
Q. You walk out, you're walking down the sidewalk, and you meet Henry Jones.
A. Yes.
...
Q. And then your testimony is Henry Jones says ah, jeez, fellows, can I join in?
A. Something like that, yes, sir.
Q. Something like that, right?
A. Yes, sir.
...
Q. Your testimony is he says wait, fellows, I can join; I've got a gun. Is that how it happened?
A. He didn't say it like that, but he said the same, but another way.
Q. Another way, but that's what he-that was what was said, wasn't it?
A. Yes.
Q. And then you let him join in.
A. Yes.
Q. Just like that.
A. Just like that.
Q. And that's how he became part of this robbery plot?
A. Yes.
Then, during closing arguments, Jones's counsel argued that O'Neal's story about meeting Jones was implausible and that he could not be trusted:
The four guys in that room have known each other half their life, all their lives, and he claims he gets a phone call from Henry Jones. He doesn't know how he got his number. And he didn't say he came up on my phone Henrock [Henry Jones], I got his number in my phone. They're not that close. These four guys are together, not Henry Jones; he's not part of that club.
...
Does it make any sense? These guys are worried about-the four of them together, known each other all that time, remember he said he hadn't known Henrock that long. He's an outsider. He's not part of this gang of four. They don't need him for anything. They've got their four guns. The plan was made without him. They're not going to casually like that invite somebody in-yeah, invite somebody if we're going to play cards, invite somebody if we're going to go down and get a beer. But invite somebody to be armed robbers together? No. Uh-uh. It doesn't make any sense. Because it didn't happen.
Simply put, Jones did an able job of undermining O'Neal's credibility and suggesting to the jury that O'Neal had a motive to blame Jones for the murder and to shield his friends from responsibility. Nevertheless, the jury rejected this argument and found Jones guilty. Despite all this other evidence and argument that O'Neal was not credible and that his story was implausible-evidence and argument that the jury rejected-would the fact that O'Neal's friends were never charged have been the crucial piece of evidence that tipped the scales the other way, and led to an acquittal? It is possible . But Jones cannot prevail in this appeal by showing it is possible; he must show that, but for the alleged error, "the jury probably would have returned a different verdict." Lawrence , 365 N.C. at 519, 723 S.E.2d at 335. In light of all the other evidence Jones submitted concerning O'Neal's lack of credibility, Jones cannot meet this high burden on appeal. Accordingly, we find no plain error on this issue.
II. Prosecutor's Statements During Closing Argument
Jones next argues that the trial court erred by failing to intervene ex mero motu when the prosecutor made two allegedly improper remarks during closing argument. As with his first argument, Jones faces an imposing standard of review, and we hold that he cannot overcome it.
"Where a defendant fails to object to statements made by the prosecutor during closing argument, the standard of review is whether the remarks were so grossly improper that the trial court committed reversible error by failing to intervene ex mero motu ." State v. Martinez , --- N.C. App. ----, ----, 795 S.E.2d 386, 391 (2016). To prevail in this context, a defendant "must show that the prosecutor's comments so infected the trial with unfairness that they rendered the conviction fundamentally unfair." State v. Bohannon , --- N.C. App. ----, ----, 786 S.E.2d 781, 788, disc. rev. denied , --- N.C. ----, 793 S.E.2d 230 (2016). Applying this standard, we address Jones's two arguments in turn.
First, Jones contends that the prosecutor improperly implied that O'Neal's friends also had been prosecuted. Jones points to statements the prosecutor made concerning the importance of reaching a plea bargain with O'Neal because cutting a deal with O'Neal was better than having "four others out there walking free." Jones also argues that the prosecutor falsely asserted that O'Neal "had no incentive to lie" despite a plea agreement that, in Jones's view, plainly created a motive to lie.
Even if we were to agree that these statements were objectionable, they were not so grossly improper that they infected the trial with unfairness. These statements addressed O'Neal's credibility, and Jones ably challenged that witness's credibility on cross-examination and in his own closing argument. Moreover, as this Court has recognized, when the trial court intervenes on its own initiative during closing argument, it does so despite "an argument which defense counsel apparently did not believe was prejudicial when he heard it." Martinez , --- N.C. App. at ----, 795 S.E.2d at 391. Because this sort of sua sponte intervention by the court could inadvertently highlight arguments by the prosecutor that the defense, for tactical reasons, would prefer not be highlighted in the jury's mind, we will not find error unless the challenged comments render the trial fundamentally unfair. That did not occur here, and thus we find no error.
Jones next contends that the trial court erred by permitting the prosecutor, at closing argument, to refer to Jones's refusal to volunteer a DNA sample during the State's investigation of the crime. Jones argues that this comment violated his Fifth Amendment right against self-incrimination. We are not persuaded that this type of argument by a prosecutor violates a defendant's Fifth Amendment rights. See , e.g. , State v. Kuplen , 316 N.C. 387, 414, 343 S.E.2d 793, 808 (1986) ; Deno v. Commonwealth , 177 S.W.3d 753, 760 (Ky. 2005) ; Smith v. State , 199 P.3d 1052, 1061 (Wyo. 2009). In any event, as with the other challenged statements, the reference to Jones's refusal to voluntarily provide a DNA sample was not so grossly improper that it deprived him of a fair trial. Accordingly, under the exacting standard of review that applies here, we find no error in the trial court's judgments.
Conclusion
We find no plain error in the trial court's exclusion of evidence concerning the State's decision not to charge other people who were allegedly involved in the crimes. We find no error in the trial court's decision not to intervene ex mero motu to correct allegedly improper statements by the prosecutor at closing argument.
NO PLAIN ERROR IN PART; NO ERROR IN PART.
Report per Rule 30(e).
Judges ELMORE and TYSON concur.